**Nothdurft v. Knab**

C.P. of Butler County, no. AD93-10732.

*Michael Balzarini,* for plaintiffs.
*Korry Alden Greene,* for defendants.

HORAN, *J.,* June 21, 1999—Before this court for consideration is defendants' motion in limine, which, for the reasons set forth below, is denied.

## FACTS

This case concerns a civil action arising out of the alleged medical negligence committed by the defendant doctors Harold W. Knab and James Weisensee in their care and treatment of Mary Herold. On September 14, 1993, the plaintiffs, Mary A. Nothdurft and Fred C. Herold, as the co-executors of the estate of Mary Herold, filed a complaint against the defendants, alleging negligence and causes of action for wrongful death and survival from the death of plaintiffs' decedent, Mary Herold. The defendants filed an answer and new matter on January 6, 1994, presenting various allegations in response.

The State Board of Osteopathic Medicine disciplined defendants for their treatment of Mary Herold. On February 22, 1999, defendants filed a motion in limine and a brief in support, arguing that the board is a peer review board as defined under the Peer Review Protection Act, 63 P.S. §425.1 et seq., and, as such, testimony or records of review from the board arising out of this civil action are inadmissible. Therefore, they request this court enter

an order precluding the introduction of any testimony or any record concerning the peer review of the defendants by the board.

## DISCUSSION

Plaintiffs argue that the Act is limited in its application to reviews conducted by health care providers, and, as such, because the board is not a health care provider, the provisions of the Act relied upon by the defendants do not apply in this instant case. A review of the language in relevant provisions under the Act reveals ambiguity as to whether the board may be considered a review organization under the Act.

The Act defines "peer review" as "the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers. . . ." 63 P.S. §425.2. A "professional health care provider" is defined under the Act as "individuals or organizations who are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth. . . ." 63 P.S. §425.2. The Act defines a review organization as "any committee engaging in peer review," as well as some of the following: "a physicians' advisory committee, . . . any committee established by one or more state or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. [A review organization

could also include a] . . . committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admissions thereto." 63 P.S. §425.2.

These relevant sections of the Act do not specifically refer to any licensing boards for various professions. Licensing boards are legislatively created to regulate licensing and to review licensees' performance of their professional duties. As such, while these licensing boards perform many of the review and investigative functions outlined in the Peer Review Protection Act, these boards are not expressly included within the definition of "review organizations." The board's member composition may meet the requirements of a professional society; however, the board is not established by such society. The board is legislatively created. This is a key distinction. Thus, it appears the licensing board and its proceeding are not governed by the Peer Review Protection Act.

In support of this decision, the legislative history also identifies that the Peer Review Protection Act was not intended to apply to disciplinary proceedings before the state licensing boards.

"Peer standard review organizations are not disciplinary organizations for the professionals. They deal principally with utilization review, whether a patient should have gotten the care or should not have gotten the care. They do not go into the problem of whether a doctor did something wrong or did not do something right, or whether he was negligent and so forth. Peer standard review organizations do not deal with that kind of problem. It is whether a patient should stay in the hospital a

certain length of time or whether he should not stay in the hospital a certain length of time; whether he should have the operation or whether he should not have the operation.

"This testimony through a peer standard review organization is just that. It is an advising on and a thrashing out of each one of these cases by a group of physicians. It has nothing to do with disciplining each one of these professionals groups." Legislative House Journal of Pennsylvania, May 7, 1974 at p. 4439.

Furthermore, the Osteopathic Medical Practice Act, 63 P.S. §271.1 (1978), provides at section 271.10 that

"The license shall be recorded in the office of the board in a record to be kept for that purpose. It shall be open to public inspection. A certified copy of the record shall be received as evidence in all courts in this Commonwealth."

Thus, any licensure record maintained pursuant to this provision is public and shall be admissible. This legislative directive is contrary to the effect of the Peer Review Protection Act. Therefore, interpreting from the language of both the Peer Review Protection Act and the Osteopathic Medical Practice Act, it is the ruling of this court that no confidentiality applies to the disciplinary proceeding and records pursuant thereto from the state board in this case.

Accordingly, we enter the following:

## ORDER

And now, June 21, 1999, in accordance with the foregoing memorandum opinion, it is ordered that defendants' motion in limine is denied.